**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JACOB GROSS on behalf of himself and all others similarly situated, | : **Case:** |
| | : |
| *Plaintiff,* | : |
| | : |
| - against - | : |
| | : |
| VILLAGE OF WOODRIDGE, WOODRIDGE POLICE STATION, JOAN COLLINS in her official and individual capacity, JOHN CALVELLO in his official and individual capacity, MICHAEL SPINELLI, | : |
| | : |
| *Defendants.* | : |

---

## CLASS ACTION COMPLAINT

Plaintiff, on behalf of himself and all others similarly situated, by his counsel Levi Huebner & Associates PC pleads this case against Defendants, Village of Woodridge, Woodridge Police Station, Joan Collins in her official and individual capacity, John Calvello in his official and individual capacity, Michael Spinelli, and states:

### JURISDICTIONAL ALLEGATIONS

1.      At all times material to this lawsuit, Jacob Gross ("Plaintiff") is domiciled in the Southern District of New York.

2.      At all times material to this lawsuit, Village of Woodridge, Woodridge Police Station, Joan Collins in her official and individual capacity, John Calvello in his official and individual capacity, Michael Spinelli in his official and individual capacity are domiciled and do business in the State of New York.

3.      All acts necessary or precedent to bringing this lawsuit occurred or accrued in the Southern District of New York.

4.      Federal law governs the facts and questions of law precedent to this suit.

5.      This Court has jurisdiction.

## NATURE OF ACTION

*Facts Relevant to Class Action*

6.      The New York Vehicle and Traffic Law (VTL") is the primary code of conduct governing drivers throughout the State of New York.

7.      A police officer acting as a traffic enforcement officer can only do so based on the training and qualifications certifying the officer as competent for such mission. CPL 2.30, *People v Andrade*, 172 AD3d 1547, 1552-53 [3d Dept 2019].

8.      A uniform traffic information, the instrument is, as the statute requires, "a statement of the complainant alleging facts of an evidentiary character supporting or tending to support the charges." *People v. Shapiro*, 61 N.Y.2d 880, 882, 462 N.E.2d 1188, 1188 [1984].

9.      "A valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution." *People v. Constable*, 70 Misc. 3d 140(A), 139 N.Y.S.3d 473 (N.Y. App. Term.), *leave to appeal denied,* 37 N.Y.3d 963, 171 N.E.3d 225 (2021).  "Thus, the facial insufficiency of an accusatory instrument constitutes a jurisdictional defect which is not forfeited by a defendant's guilty plea."  *Id.*

10.     Defendant Village of Woodridge ("Village") is a municipality in Sullivan County of New York.

11.     Woodridge Police Station ("Police") serves as the law enforcement unit for the Village.

12.     Joan Collins serves as the mayor of the Village ("Mayor") and is responsible for overseeing the Police.

13.     John Calvello serves as the Chief of Police of the Village ("Chief").

14.    Michael Spinelli ("Spinelli") is a nephew of the Chief.

15.    The Mayor in an effort to raise revenues that are beyond the budgetary constraints of the Village, orchestrated a scheme with the Chief to exploit "traffic enforcement" of VTL.

16.    The target of this scheme is the least sophisticated citizen, and unlike a police officer, is unfamiliar with the workings of VTL.

17.    The sworn police officers of the Woodridge Police Station declined to participate in the scheme to raise revenue for the Village through traffic enforcement.

18.    Given that sworn police officers are prohibited from engaging in selective enforcement and given that sworn police officers are prohibited from exploiting law enforcement to raise revenues for the municipality, the Mayor and the Chief employed an individual that is not a sworn police officer as a workaround to the objections from Woodridge's sworn police officers.

19.    The Mayor with the Chief devised a plan to enlist Spinelli in that scheme.

20.    Spinelli is a nephew of the Chief.

21.    At all relevant times, Spinelli was not a sworn police officer.

22.    At all relevant times, Spinelli did not have the training required to enforce traffic laws under VTL.

23.    At all relevant times, Spinelli did not have the training required to operate a radar detector.

24.    At all relevant times, in order to pass Spinelli on to the Village's payroll, the Mayor employed Spinelli as a "Constable" of the Village.

25.    At all relevant times, Spinelli did not operate as a "Constable."

26.     Instead, the Mayor and the Chief dressed Spinelle in the same uniform as sworn officers of the Police without any insignia that Spinelli is a Constable.

27.     In furtherance of the scheme, the Mayor and the Chief provided Spinelle with a police cruiser with the same emblems as a sworn officer of the Police without any insignia that could distinguish Spinelli as a Constable.

28.     In furtherance of the scheme, Spinelli identified himself in public as a sworn police officer.

29.     Under New York Penal Law §§ 190.25, 190.26, it is a felony in the first or second degree for a person knowingly pretending to be a police officer, wearing or displaying without authority, any uniform, badge or other insignia thereof, by which such police officer is lawfully distinguished, or expresses by words or actions that he or she is acting with the approval or authority of any police department and so acts with intent to induce another to submit to such, or otherwise to act in reliance upon.

30.     The Court of Appeals for the State of New York clarified that the function of constables as peace officer come with "functional differences which limit the places and circumstances under which peace officers can use their police powers, … a peace officer who acts under color of law and with all the accouterments of official authority cannot" act beyond the authority bestowed upon them by law. *People v Page*, 35 NY3d 199, 204 [2020].

31.     At all relevant times the Chief and the Mayor employed Spinelli to issue traffic enforcement citations under VTL, notwithstanding that Spinelli was not trained nor certified in enforcement of VTL.

32.     At all relevant times the Chief and the Mayor knew that Spinelli was not trained nor certified in enforcement of VTL.

33.    At all relevant times, the Village of Woodridge was aware that Spinelli was not trained nor certified in enforcement of VTL.

34.    At all relevant times the Chief and the Mayor employed Spinelli to issue speeding tickets under VTL and pretended to have observed a speeding violation, notwithstanding that Spinelli was not trained nor certified in the enforcement of VTL.

35.    Each time Spinelli issued a traffic enforcement citation, Spinelli was dressed as a sworn officer of the Police and was using a police cruiser with the same emblems as a sworn officer of the Police.

36.    At all relevant times when Spinelli issued a traffic citation, Spinelli did not identify itself as a Constable, but as a sworn officer of the Police.

37.    Each of the traffic enforcement citations issued by Spinelli identified the enforcement agency as a "Police Agency WPS" (for short as Woodridge Police Station) with the "Local Police Code 49/30."  The citations did not disclose whether Spinelli is a Constable.

38.    Each of the traffic enforcement citations issued by Spinelli identified himself with the badge number "Officer ID 362".

39.    Given that Spinelli was neither a sworn officer nor trained in the traffic enforcement, each citation issued by Spinelli purporting to enforce VTL was void ab initio.

40.    As a direct result of the deception created by the Defendants in its entirety, a citizen who received a traffic enforcement citation from Spinelli was induced to believe that Spinelli is a legitimate sworn police officer.

41.    Came to defending the ticket, before the Woodridge Village Court, the Chief and the Mayor would change the traffic fine to a simplified ticket, also known as a parking ticket, so the Village would consume the entire loot of illegal revenues all disguised as  a parking

fine. Whereas, in legitimate traffic enforcement, much of the revenues of traffic enforcement are shared with the State by the Municipality.

42.     Under the fraudulent appearance that Spinelli is a legitimate sworn police officer, each member of the Plaintiff's class was induced to forgo seeking an outright dismissal of such traffic enforcement citation and opt for a plea deal converting the traffic citations into a simplified ticket.

43.     The Mayor and the Chief would sit in the local municipal court for the Village and volunteer to convert each traffic citation into a simplified ticket, despite knowing that instrument is void ab initio.

44.     The purpose of converting traffic enforcement citations into parking tickets, the revenues of parking tickets are retained by the Village, whereas traffic enforcement citations are turned over to the State.

45.     Another purpose converting traffic enforcement citations into parking tickets, is the fact that Spinelli as not being trained in Vehicle and Traffic Law was automatically disqualified from appearing before the municipal court to press any charges on behalf of the State.

46.     At the same time, a citizen receiving a traffic enforcement citation from a sworn police officer, fears that a guilty verdict would add to points to the driver's license, fears imprisonment, and fears the trigger of an increase in insurance premiums by private carriers.

47.     In exploiting the fears of the citizens, while concealing that Spinelli is not authorized to issue traffic enforcement citations and under the fraudulent inducement that Spinelli is a sworn officer, the Mayor and the Chief raised handsome revenues for the Village.

48.     The revenues would then be used by the Mayor and the Chief for discretional spending.

49.     Each of these aforementioned traffic enforcement citations issued by Spinelli started sometime in June 2019 and continues to date.

50.     Besides the revenues the Village would obtain from each fabricated parking ticket, each parking ticket incurred a surcharge that would get paid to the State of New York by the person entering the plea.

*Specific Facts Relating to Plaintiff*

51.     On September 20, 2021, Spinelli conducted a traffic stop on Plaintiff and falsely represented to being a sworn police officer of the Police.

52.     At all relevant times, Spinelli did not have probable cause to target Plaintiff, as the Plaintiff did not violate any traffic laws.

53.     At all relevant times, Spinelli did not have probable cause to target Plaintiff, as Spinelli was not trained in the enforcement of traffic laws.

54.     At all relevant times, Spinelli was dressed in the uniform of a sworn police officer of the Police.

55.     At all relevant times, Spinelli operated a marked police cruiser with the stationery of a sworn officer of the Woodridge Police Station.

56.     Spinelli fabricated a traffic complaint with the citation number BF8527750, representing to be a complaint by the People of the State of New York, with the bearings "Police Agency WPS" (for short as Woodridge Police Station) with the "Local Police Code 49/30" and with an "Officer ID 362".

57.     The citation bore the fabrication that Plaintiff engaged in an "imprudent speed" at an unspecified speed.

58.    Spinelli was neither a police officer nor trained in Vehicle and Traffic Law 1180 and did not have the authority to impersonate the Police to issue such citation.

59.    As a direct result of the fraudulent inducement that Spinelli is a sworn police officer, Plaintiff was unaware of that fact and on February 16, 2022, proceeded to accept converting the traffic enforcement citation into a simplified ticket and incurred a surcharge of $25.

60.    After the ineligibility of Spinelli became public knowledge, Plaintiff moved in the Woodridge Municipal Court to vacate the guilty plea on behalf of himself and for the dismissal of the traffic enforcement citations issued by Spinelli.

61.    On January 30, 2023, the Woodridge Municipal Court vacated Plaintiff's guilty plea and dismissed the ticket as applied to Plaintiff and held:

> Defendant asserts as a basis for vacating the plea that his newly discovered evidence indicates that Michael Spinelli is not a Village of Woodridge police officer nor radar trained and had he known these facts he would have not entered into a negotiated plea and elected a trial on the merits. Defendant evidences Spinelli's uniform, police car, and badge number as evidence of police officer status and asserts misrepresentation under color of law. Allegations of misrepresentation under color of law are beyond the scope of this courts jurisdiction and normally reserved for state or federal district court if defendant believes his civil rights have been violated. The burden of proof in a criminal case is on the prosecution to prove each and every element of the offense beyond a reasonable doubt. Raising the issue of an officers status or legitimacy at trial may have created a reasonable doubt in the trier of fact to warrant dismissal of the underlining traffic citation.
>
> …
>
> Since the burden of proof is on the people to prove each and every element of the offense beyond a reasonable doubt, the defendant by virtue of raising the issue of proper education, training, and specialization, along with the language of section 1180(a), involving excessive speed has raised a colorable claim of reasonable doubt by this court. The court notes that no affidavit of Michael Spinelli is offered in evidence as rebuttal and only counsels affirmation.
>
> Consequently, the judgment convicting defendant of driving at a speed greater than is reasonable and prudent under VTL 1180(a) is reversed, and the simplified traffic information charging this offense is dismissed.

62.     To date Defendants have not refunded Plaintiff the charge for the fabricated traffic ticket and its surcharge.

63.     On March 20, 2023, Plaintiff served Defendants with a notice of tort claim.

## Basis and Intention for Class Certification

64.     Plaintiff brings this action individually, and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

65.     In the same manner Defendants had fraudulently induced Plaintiff to believe that Spinelli is a sworn officer is the same way that Defendants violated the rights of each member of the class.

66.     The identities of all class members are readily ascertainable from the records of the Village by looking at each traffic citation issued by Spinelli.

67.     Plaintiff reserves the right and demands discovery of each traffic citation issued by Spinelli.

68.     Plaintiff's class does not include individuals who are officers, members, partners, managers, directors, and employees of the Village.

69.     The question of law and fact common to the Plaintiff's Class is whether the Defendants practice of misrepresentation to the public that Spinelli is a sworn police officer, fabricate tickets alleging violations of VTL 1180, in an effort to induce members of the public to accept paying a simplified traffic ticket, violated the due process of each person who was subject to such citation.

70.     The question of law and fact common to the Plaintiff's Class is whether the Defendants practice employing an unqualified person to issue traffic enforcement citations without

the proper qualifications, in an effort to elicit money from innocent citizens, violating the constitutional rights of such citizens.

71.    The question of law and fact common to the Plaintiff's Class is whether the Defendants practice of misrepresentation to the public that Spinelli is a police officer, in an effort to induce members of the public to pay for traffic enforcement citations issued by Spinelli, constituted fraudulent inducement against each person who was made to pay such citations to deprive such person of a constitutional right under the color of law.

72.    The question of law and fact common to the Plaintiff's Class is whether the Defendants practice of converting traffic enforcement citations into parking tickets, under the misrepresentation that Spinelli is a police officer, constituted an injury against each person who was made to pay such citations to deprive such person of a constitutional right to due process under the color of law.

73.    The Plaintiff's claims are typical of the class members, as outlined, based upon the same facts and legal theories.

74.    The Plaintiff can protect the interests of the Plaintiff's Class fairly and adequately.

75.    The Plaintiff has retained experienced counsel in good standing, who will vigorously pursue this action in the best interest of the Plaintiff's Class.

76.    This class action will preserve adjudications from inconsistent and varying rulings, including exercising the appeals process.

77.    This class action will preserve judicial resources because Plaintiff's Class is so numerous that joinders of all members, the prosecution of all claims individually would be

impractical, or that Plaintiff not pursuing the valid claims common to each member of Plaintiff's Class will constitute a manifest of injustice.

78.    This class action will protect the class as a practical matter, including the least sophisticated citizen, who would have difficulties commencing an action by themselves to assert his or her rights.

79.    Certification of a class under FRCP Rule 23(b)(2) will determine whether Defendants communications with the Plaintiff that Spinelli is a police officer, is the same as with each member of Plaintiff's Class, where tantamount to declaratory relief and monetary relief under the governing law would be merely identical to that determination.

80.    Class Certification under FRCP Rule 23(b)(3) will show that the questions of law and fact common to all members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

81.    Defendants have acted, or did not act, on grounds generally applicable to the Rule (b)(l)(A) and (b)(2) Classes, thereby making appropriate final injunctive relief with respect to the Class as a whole, to enjoin the retaining any revenues that Defendants accumulated from Spinelli's misrepresentation as a sworn officer of the Police.

82.    Notice is hereby given, depending on the outcome of further investigation and discovery, at the time of class certification motion Plaintiff may seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

83.    Notice is hereby given, depending on the outcome of further investigation and discovery, at the time of class certification motion Plaintiff may seek to pursue this action as a mass tort action.

## FIRST CLAIM FOR RELIEF

84.     Plaintiff incorporates herein all of the allegations stated in paragraphs from 1 to 83, for relief on behalf of himself and all others similarly situated against 42 USC 1983 against Spinelli.

85.     "To prove a Section 1983 fair trial claim, a plaintiff must establish that (1) the officer created false information, (2) the officer forwarded the false information to prosecutors, (3) the false information was likely to influence a jury's decision, and (4) the plaintiff suffered a deprivation of life, liberty, or property as a result of the officer's actions." *Sacaza v. City of New York*, 2024 WL 4333688, at *10 (E.D.N.Y., 2024). "Government officials may be held liable for fabricating evidence through false statements or omissions that are both material and made knowingly." *Id*. "Information may be 'false' if material omissions render an otherwise true statement false." *Id*.

86.     Spinelli fabricated false information by issuing traffic citations for violations of VTL 1180 and misrepresenting himself as being a sworn police office of the Woodridge Police Station.

87.     Each of the traffic citations issued by Spinelli was false because, at the time Spinelli had neither the authority to issue citations, nor the authority to misrepresent himself as being a sworn police officer of the Woodridge Police Station.

88.     Each of the traffic citations issued by Spinelli, alleging violations of VTL, were forwarded to prosecutors, i.e. the Chief and the Mayor who act as the prosecutors for the Woodridge Village Court.

89.     Each of the traffic citations issued by Spinelli, alleging violations of VTL, were forwarded to prosecutors, had the capability of influencing a jury that such instrument was valid, under the misrepresentation that Spinelli was a sworn police officer of the Woodridge Police

Station—when in fact he was not, and that Spinelli had the authority under the law to issue traffic citations—when such authority was lacking.

90.     Each traffic citation alleging a violation of VTL 1180 carries the threat of imprisonment, as a punishment prescribed by law.

91.     The plaintiff suffered a deprivation of property by being fraudulently induced to negotiate the traffic citation as a result of the Spinelli's actions into a simplified traffic citation, and each class member was induced to pay a "surcharge" to avoid the fine with points.

92.     The forwarding of each of the traffic citations advanced by Spinelli was itself "a deprivation of liberty." *Barnes v. City of New York*, 68 F.4th 123, 129 (2nd Cir. 2023).

93.     "In fact, we have held that there may be a violation of due process based on fabricated evidence even without the use of fabricated evidence at trial because the fair trial right protects against deprivation of liberty that results when a police officer fabricates and forwards evidence to a prosecutor that would be likely to influence a jury's decision, *were that evidence presented to the jury*." *Barnes v. City of New York*, 68 F.4th 123, 130 (2d Cir. 2023) (italics in the original).

94.     Plaintiff has no other and adequate remedy at law.

## SECOND CLAIM FOR RELIEF

95.     Plaintiff incorporates herein all of the allegations stated in paragraphs from 1 to 94, for relief on behalf of himself and all others similarly situated against 42 USC 1983 against Spinelli.

96.     "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. Thus an attempt to extort money by a

threat of arrest may make the actor liable even where the arrest, or the threat alone, would not do so. In particular police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position." Restat 2d of Torts, § 46.

97.     At all relevant times, Plaintiff, and each member of his class, has an implied due process right to be free from extortion. Whereas the Constitution provides that the penalizing, and subjecting a person to penalty, must be authorized by law and follow due process.

98.     Spinelli acted under the color of law, by falsely impersonating himself as a police officer of the Woodridge Police Station, even though he was not a sworn police officer, to create each of the false traffic citations alleging violation of VTL 1180.

99.     Each traffic citation that Spinelli issued was an act of extortion, as the penalties of VTL 1180 include a fine and imprisonment, and the intended target was to fraudulently induce each member of Plaintiff's class to settle the traffic citation for a simplified charge of a parking ticket.

100.    The Plaintiff and each member of Plaintiff's class were subjected to a traffic citation issued by Spinelli alleging a violation of VTL 1180 that was forwarded to a prosecutor.

101.    Spinelli was not authorized, nor had any legitimate authority, to make the threat of extortion by subjecting each class member to the threats of penalty VTL 1180 provides.

102.    Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

### THIRD CLAIM FOR RELIEF

103.    Plaintiff incorporates herein all of the allegations stated in paragraphs from 1 to 102, for relief on behalf of himself and all others similarly situated against 42 USC 1983 against all Defendants.

104.    Each Defendant acted together to misuse the color of the law of traffic enforcement, to employ Spinelli to fabricate false charges of VTL 1180, without the authority of the law to do so.

105.    Each Defendant acted together as a disguise on the highway to misuse the color of the law of traffic enforcement on the streets of the Village of Woodridge.

106.    Each of the Defendants acted together by knowingly employing Spinelli under the color of law as a sworn police officer, outfitting him with the uniform of a sworn police officer, despite Spinelli was not a sworn police officer.

107.    Each of the Defendants acted together by knowingly employing Spinelli under the color of law for enforcement of VTL despite Spinelli lacking the standing and authority to engage in the enforcement of VTL.

108.    Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

## FOURTH CLAIM FOR RELIEF

109.    Plaintiff incorporates herein all of the allegations stated in paragraphs from 1 to 108, for relief on behalf of himself and all others similarly situated against all Defendants under 42 USC 1983.

110.    Defendants misused Spinelli under the color of law as a conduit to issue traffic citations under VTL 1180 to enrich itself at the expense of Plaintiff and each member of the Plaintiff's class, despite there was no authority to employ Spinelli as an enforcement officer of VTL 1180.

111.    Each traffic citation under VTL 1180 issued by Spinelli is void ab inito.

112.    Each traffic citation under VTL 1180 issued by Spinelli was issued by means of engagement of the crime of impersonating a sworn police officer,

113.    To date, the Defendants have not refunded Plaintiff the fines he paid for the simplified traffic citation issued by Spinelli, despite the fact that the Woodridge Village Court vacated the Plaintiff's plea and dismissed the charge.

114.    It is against equity and good conscience to permit Defendants to unjustly retain the revenues it generated from the traffic citations issued by Spinelli, under the color of law, at a time when Spinelli was unauthorized by law to issue such traffic citations, and such amounts should be recovered and refunded to each member of Plaintiff's class.

115.    Plaintiff pleas for the imposition of a constructive trust on the all funds that Defendants obtained from each class member.

116.    Plaintiff has no other adequate remedy at law available to redress and remedy this controversy for relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor

and award damages as follows: (i) class certification, (ii) recovery of actual damages, (iii)

equitable damages (including refunding all traffic citations in full), (iv) punitive damages,

and (v) costs with attorney's fees (vi) as well as such other and further relief in favor of

this complaint.

The Plaintiff respectfully demands a trial by jury of all claims so triable.

Dated: Brooklyn, New York
          April 9, 2025

                                          Respectfully submitted,

                                          Levi Huebner & Associates, PC

                                          Respectfully submitted,

                                          / s /     Levi Huebner
                                          By: Levi Huebner

                                          464 Malbone Street, Suite 100
                                          Brooklyn, NY 11225
                                          (212) 354-5555